

**FILED**
**Mar 31, 2023**
**08:14 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Sherry Cain,** | ) | **Docket No. 2022-01-0150** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Volkswagen of America, Inc.** | ) | **State File No. 21842-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **XL Insurance America, Inc.,** | ) | **Judge Audrey Headrick** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

Ms. Cain asked the Court to award permanent partial disability benefits based upon the impairment rating assigned by the Medical Impairment Rating Registry physician.[1] Relying on its independent medical evaluation, Volkswagen argued it rebutted the presumption of accuracy afforded to the Registry physician's impairment rating by clear and convincing evidence. The Court finds it did not rebut the presumption of correctness attached to the Registry physician's impairment rating. For the reasons below, the Court holds Ms. Cain is entitled to permanent partial disability benefits based on the Registry physician's impairment rating.

### History of Claim

The underlying facts are not disputed. On February 12, 2021, Ms. Cain worked in quality assurance at Volkswagen where she repetitively lifted twenty-eight-pound hoods to inspect the engine. She experienced pain and swelling in her left upper back, arm, underarm, and chest. Ms. Cain sought emergency care, and the doctor diagnosed her with deep vein thrombosis and thoracic outlet syndrome. After removing a blood clot from her vein and placing her on a blood thinner, the doctor determined Ms. Cain's work activities caused the clot.

---

[1] At the hearing, Ms. Cain withdrew her claim for attorney fees and expenses for wrongful denial of benefits under Tennessee Code Annotated section 50-6-226(d)(1)(B) (2022).

Ms. Cain then selected Dr. Neelima Katraguta, a vascular surgeon, from a panel. Dr. Katraguta surgically removed Ms. Cain's left first rib. After the surgery, an ultrasound showed a chronic-appearing non-occlusive thrombosis in her left subclavian vein. Dr. Katraguta placed Ms. Cain at maximum medical improvement on December 8, 2021, and assigned a fifteen percent impairment.

After receiving Dr. Katraguta's rating, Volkswagen hired Dr. Jeffrey Hazlewood, board-certified in physical medicine rehabilitation and pain management, for a second opinion.[2] Dr. Hazlewood testified that Ms. Cain denied pain down her left arm and reported resolution of prominent veins on the left side of her chest. However, she complained of periodic swelling, numbness and tingling, fatigue with overuse, and occasional left-elbow pain and said she still had difficulty with some activities of daily living.

Dr. Hazlewood testified that he observed no swelling and no prominent veins. Dr. Hazlewood believed the pain and tingling in her left chest and arm was caused by soft tissue myofascial pain in the shoulder area and not from the blood clot. He determined she did not have "claudication or upper extremity symptoms from the blockage of the blood flow from the clot." Dr. Hazlewood diagnosed her with venous thoracic outlet syndrome from the venous thrombosis.

Dr. Hazlewood stated "a DVT is not easily rated in the Sixth Edition." He testified that there are two tables a doctor can use for DVT: Table 9-12 for thrombotic disorders or Table 4-13 for upper extremity peripheral vascular disease. Dr. Hazlewood agreed that a physician can consider Table 4-13 for DVT "[i]f one has a lot of pain and residual edema," but he chose to use Table 9-12 because it "was definitely the better of the two charts or tables to use." He explained he reached that conclusion based on courses he attended and talking with the Guide's authors.

After deciding which table to use, Dr. Hazlewood considered several factors in his assessment. He noted Ms. Cain had no claudication, no swelling, no prominent veins, and a resolved clot. She also had only one DVT episode and did not have a genetic clotting disorder. Using these factors, he assigned a two-percent impairment rating.

Due to the conflicting ratings, Ms. Cain requested a rating from the Medical Impairment Rating Registry. Ms. Cain and Volkswagen agreed upon Dr. Jerry Smith, board-certified in physical medicine and rehabilitation. During his examination, Ms. Cain complained of daily, intermittent pain in the left upper chest, upper trapezius area, and upper arm. She also had constant swelling in the left upper trapezius and collarbone area and tingling in the left upper chest and upper arm. She reported difficulty with several activities of daily living.

---

[2] Ms. Cain testified she requested mileage reimbursement for traveling to Nashville for the examination, which Volkswagen did not pay.

On examination, Dr. Smith observed that the veins in Ms. Cain's left upper chest area appeared more prominent than the right. She had mild swelling in the left clavicle area and upper trapezius area and was tender in her upper chest and along a left underarm scar. During testing, Ms. Cain experienced claudication, which is a tingling pain that resolves when activity stops, in her left upper chest and upper arm. Based on Ms. Cain's history and exam, Dr. Cain diagnosed left venous thoracic outlet syndrome and venous thrombosis.

Dr. Smith testified that DVT is hard to rate under the AMA Guides. He looked at Table 9-12 but "thought it was not the most appropriate for her particular problems and injury" because it is more for thrombotic disorders that cause people to have "clots over and over." Dr. Smith said, "[Ms. Cain] doesn't fit in this whole section of this book." Instead, Dr. Smith identified Table 4-13 as the most appropriate because objective test results are the "key factor," and a venous Doppler study provided objective evidence that Ms. Cain suffers from venous peripheral vascular disease.

Using Table 4-13, Dr. Smith stated Class 2 applied because of Ms. Cain's history of intermittent claudication and mild swelling, and her description of symptoms fell within the middle of Grade C. Thus, he assigned a ten-percent impairment.

On cross-examination, Dr. Smith admitted that the "physical findings" for Class 2 of Table 4-13 describe "[v]ascular damage evidenced by a healed amputation of two or more digits of one extremity with evidence of persistent vascular disease or superficial ulceration." He further agreed that these findings do not apply to Ms. Cain. When asked what the Guides instruct if the physical findings are inapplicable, Dr. Smith stated, "I'm not sure. What I do is just take an overall. Like for this, there's physical findings [in the table that are] described more in the history. Like edema they put [in the history section] instead of in the physical findings." Dr. Smith clarified, "I'm sure you're supposed to do the best you can with information provided in the tables."

Dr. Hazlewood testified he disagreed with Dr. Smith's rating because Ms. Cain had neither claudication nor any swelling in the upper extremity. Likewise, Dr. Hazlewood believed the venous Doppler ultrasound was normal, although he acknowledged "[t]he scarring is going to be there." Dr. Hazlewood clarified "that's just old, dried blood, basically, or a dried scar and clot [sic] but it was not an active clot." He concluded that '[a]t most, [Ms. Cain] would be class 1" if using Table 4-13.

Both Drs. Hazlewood and Smith disagreed with Dr. Katraguta's fifteen-percent impairment rating, which provided no information regarding her use of the AMA Guides.

At the hearing, Ms. Cain testified that when Dr. Hazlewood examined her, she had very noticeable veins and pointed out her shoulder and arm swelling. She said she complained of fatigue and reported pain in both her left shoulder and arm, not just her

shoulder.

Ms. Cain also testified regarding how her injury impacts activities of daily living. She described difficulty with the following activities: taking a blouse on or off, washing her hair, carrying groceries, sleeping on her left side, picking up her grandbaby, swimming, and gripping a steering wheel while driving.

Ms. Cain and Volkswagen agreed she is only entitled to an original award of permanent partial disability benefits. She returned to work at Volkswagen making greater pay than she made on the date of injury. Further, the end of the initial compensation period expired regardless of the rating relied upon by the Court.

## Findings of Fact and Conclusions of Law

At a Compensation Hearing, Ms. Cain must prove by a preponderance of the evidence that she is entitled to benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2022).

Under Tennessee Code Annotated section 50-6-204(d)(4), Dr. Smith's impairment rating as the Registry physician is presumed to be accurate but may be rebutted by clear and convincing evidence. In *Mansell v. Bridgestone Firestone N. Am. Tire*, 417 S.W.3d 393, 411 (Tenn. 2013), the Tennessee Supreme Court considered this statute and defined the clear and convincing standard as follows: "if no evidence has been admitted which raises a 'serious and substantial doubt' about the evaluation's correctness, the MIRR evaluation is the accurate impairment rating."

The Court in *Mansell* also addressed relevant factors to consider when deciding whether a party rebutted the Registry physician's statutory presumption of accuracy. Those factors include: (1) a comparison of the specialties of the physicians providing the ratings; (2) whether a disagreement exists between the physicians regarding the employee's diagnosis; and (3) whether a Registry physician "used an incorrect method or an inappropriate interpretation" of the AMA Guides. *Id.* at 410-411. Further, "the focus is on the evidence offered to rebut [the Registry] physician's rating." *Id.* at 411.

Applying those factors here, the Court first finds Drs. Smith and Hazlewood are equally qualified to assess a rating. Both are board-certified in physical medicine and rehabilitation. Both are also Registry physicians.

Second, the Court finds that no disagreement exists between the doctors regarding Ms. Cain's diagnoses.

Third, the Court finds Dr. Hazlewood's deposition testimony did not prove that Dr. Smith "used an incorrect method or an inappropriate interpretation" of the AMA Guides. Instead, Dr. Hazlewood stated that doctors can use *either* Table 9-12 *or* Table 4-13 for

4

DVT. He stated a physician can consider using Table 4-13 "[i]f one has a lot of pain and residual edema." Although he felt Table 9-12 was the best option, Dr. Hazlewood's testimony reflects that using either table to rate a DVT is appropriate.

Finally, the Court considers Dr. Hazlewood's testimony that '[a]t most, [Ms. Cain] would be class 1" if using Table 4-13. He interpreted the venous Doppler study as normal while Dr. Smith believed it showed the existence of thrombosis. Dr. Hazlewood stated he did not observe swelling or prominent veins. He attributed Ms. Cain's pain to soft tissue myofascial pain instead of a blood clot and concluded she did not have claudication. However, Dr. Smith, who placed Ms. Cain in Class 2, did observe those symptoms. Therefore, the Court finds Dr. Hazlewood's testimony did not prove Dr. Smith incorrectly classified Ms. Cain using Table 4-13.

Turning to the lay testimony, the Court is guided by longstanding authority that the employee's own assessment of her physical condition and resulting disability is competent testimony not to be disregarded. *Orrick v. Bestway Trucking, Inc*., 184 S.W.3d 211, 217 (Tenn. 2006). Here, Ms. Cain's testimony is particularly important regarding the symptoms that existed during her examinations with Drs. Hazlewood and Smith.

Specifically, Ms. Cain's testimony about her symptoms mirrored those described by Dr. Smith: swelling in her shoulder and arm, fatigue, pain in her shoulder and arm, and very visible veins. She also testified she had these same symptoms when Dr. Hazlewood examined her.

The Court finds Ms. Cain credible. Her testimony was calm, self-assured, confident, forthcoming, reasonable, and honest. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility). She neither exaggerated nor embellished her symptoms. Instead, the Court was convinced she provided an honest assessment of the symptoms that existed during her examinations with Drs. Hazlewood and Smith.

Therefore, the Court finds Volkswagen did not rebut the presumption of correctness attached to Dr. Smith's rating. Thus, the Court awards Ms. Cain ten-percent permanent partial disability benefits under Tennessee Code Annotated section 50-6-207(3)(A), calculated as ten percent times 450 weeks times the stipulated compensation rate of $746.51, or $33,592.95.

**IT IS, THEREFORE, ORDERED** as follows:

1. Volkswagen shall furnish medical care for Ms. Cain's injury as required by Tennessee Code Annotated section 50-6-204.

2. Volkswagen shall pay Ms. Cain permanent partial disability benefits totaling $33,592.95.

5

3. Ms. Cain's attorney is entitled to a twenty-percent attorney's fee to be paid from her award. Tenn. Code Ann. § 50-6-226(a)(1).

4. Volkswagen shall pay Ms. Cain mileage reimbursement for her travel to Dr. Hazlewood's office in Lebanon, Tennessee. Tenn. Code Ann. § 50-6-204(a)(4)(A).

5. Volkswagen shall pay the $150.00 filing fee to the Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022).

6. Volkswagen shall file form SD-2 with the Clerk within ten business days of this order becoming final.

7. Unless appealed, this order shall become final in thirty days.

**ENTERED March 31, 2023.**


*Audrey Headrick*
_____
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Deposition of Dr. Smith
2. Deposition of Dr. Hazlewood
3. Pages from the AMA Guides, Sixth Edition
4. Pre-Compensation Hearing Statement

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Hearing
4. Notice of Appearance
5. Motion to Withdraw as Counsel for Employer
6. Order Granting Motion to Withdraw as Counsel for Employer
7. Scheduling Order
8. Ms. Cain's Witness and Exhibit List
9. Dispute Certification Notice
10. Employee's Pre-Hearing Brief
11. Pre-Compensation Hearing Brief
12. Volkswagen's Witness and Exhibit List
13. Employer's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on March 31, 2023.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Jeff Rufolo, Employee's Attorney | | X | jrufolo@summersfirm.com |
| Jeff Powell, Employer's Attorney | | X | jpowell@hennessyroach.com |

/s/Penny Shrum        w/permission JD
_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

For notices of appeal filed on or after July 1, 2022.



<u>Compensation Order Right to Appeal</u>:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board.  *See the Rules governing the Workers' Compensation Appeals Board on  the Bureau's website*

***For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.***

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).**



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the
Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-
stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____      2. Address: _____

3. Telephone Number: _____      4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $_____ per month      Medical/Dental $_____ per month

Groceries        $_____ per month      Telephone      $_____ per month

Electricity      $_____ per month      School Supplies $_____ per month

Water            $_____ per month      Clothing       $_____ per month

Gas              $_____ per month      Child Care     $_____ per month

Transportation   $_____ per month      Child Support  $_____ per month

Car              $_____ per month

Other            $_____ per month (describe: _____ )

10. Assets:

Automobile            $_____        (FMV) _____

Checking/Savings Acct. $_____

House                 $_____        (FMV) _____

Other                 $_____        Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082